**Luke FONTANA, Plaintiff-Appellant,**

v.

**Mack E. BARHAM, et al.,
Defendants-Appellees.**

**No. 82–3064.**

United States Court of Appeals,
Fifth Circuit.

June 17, 1983.

Rehearing and Rehearing En Banc
Denied July 18, 1983.

Silvestri, Marinaro, Massicot & Davis, Frank A. Silvestri, Frank Sloan, New Orleans, La., for plaintiff-appellant.

Stone, Pigman, Walther, Wittmann & Hutchinson, Kyle D. Schonekas, Phillip A. Wittmann, New Orleans, La., for Barham.

Casandra J. Cooper, Harvey, La., for Ernest Jones.

Galen S. Brown, Deputy City Atty., New Orleans, La., for City of New Orleans, et al.

Before GOLDBERG, GEE and RANDALL, Circuit Judges.

GOLDBERG, Circuit Judge:

In this appeal we are asked to determine whether certain alleged activities of governmental officials are actionable under 42 U.S.C. § 1983 (1976). The district court dismissed appellant's cause of action for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). We affirm.

## I. FACTS AND PROCEEDINGS BELOW

### A. Facts

On April 12, 1975, Sheryl Cheatham's husband was killed in an incident involving two New Orleans police officers. Wishing to pursue a wrongful death action against the City of New Orleans ("City"), Mrs. Cheatham retained as her legal counsel plaintiff-appellant Luke Fontana and defendants Charles Cotton, David Dennis, and Ernest

Jones. The arrangement between Mrs. Cheatham and her attorneys was memorialized in a contingent fee agreement executed on May 5, 1975, which provided that the attorneys were to receive as compensation fifty percent of Mrs. Cheatham's total recovery following a successful appeal of her claim.

Mrs. Cheatham's wrongful death action, while ultimately successful, precipitated a trial and two appeals in the state courts of Louisiana. Defendant-appellee Mack Barham was engaged to handle the writ application to the Louisiana Supreme Court, which awarded Mrs. Cheatham a $619,000 judgment against the City and others. *Cheatham v. City of New Orleans,* 378 So.2d 369 (La.1979). This judgment became final when the court denied rehearing on January 11, 1980.

After the judgment became final, and during the efforts to collect, a dispute arose concerning the division of attorneys' fees. On March 21, 1980, Fontana attempted to record the contingent fee contract in the record of the *Cheatham* case in compliance with La.Rev.Stat.Ann. § 37:218 (West Supp.1983).[1] On April 11, 1980, the City issued two checks in payment of the judgment, both of which listed only Mrs. Cheatham as payee. Mrs. Cheatham negotiated the checks, and the attorneys' fees were apportioned among the other attorneys to the exclusion of appellant Fontana.

After the City had distributed the funds to Mrs. Cheatham, Fontana filed summary proceedings in Louisiana state court against the City, arguing that he was entitled to a portion of the *Cheatham* judgment pursuant to the recorded contingent fee agreement. The trial court held for Fontana, but the Louisiana court of appeals reversed. *Cheatham v. City of New Orleans,* 391 So.2d 1324 (La.App.1980). The court of appeals held that Fontana's effort to record his employment contract failed to protect his interest because the contract was filed pursuant to an inapplicable statute. *Id.* at 1326. The court noted that La.Rev.Stat. Ann. § 37:218, upon which Fontana had relied, provides protection against the loss of attorneys' fees in the event the client and the adverse party settle the pending suit. *Id.* In this case, the court stated, the applicable statute would have been La.Rev. Stat.Ann. § 9:5001 (West 1951), which grants to attorneys a privilege[2] to secure fees on judgments obtained by them. *Id.* Because Mrs. Cheatham's case resulted in a judgment rather than a settlement, Fontana should have pursued his right to attorneys' fees under La.Rev.Stat.Ann. § 9:5001. The court further observed that in recording the contingent fee agreement Fontana had denominated his action a "petition to intervene."[3] The court labelled the attempted intervention a "misnomer ... considering the provisions of [La.Code Civ. Proc.Ann. art. 1091–1094 (West 1960)] with respect to intervention and considering that there was no suit pending in the trial court into which an intervention could be filed." *Id.* Thus, the court held that Fontana's effort to preserve an interest in the *Cheatham* judgment failed.

### B. Procedural History

Fontana initiated this action in the United States District Court for the Eastern

---

1. La.Rev.Stat.Ann. § 37:218 (West Supp.1983) permits an attorney to acquire as his fee an interest in the subject matter of a client's claim and protects that interest in the event that the client settles or compromises the cause of action. The Louisiana Supreme Court has interpreted § 37:218 as creating no more than a privilege to aid the attorney's collection of a fully earned fee out of the fund yielded by satisfaction of the client's claim. *Saucier v. Hayes Dairy Prods., Inc.,* 373 So.2d 102, 117 (La.1979) (on reh'g).

2. Under Louisiana law, a privilege is "a right, which the nature of a debt gives to a creditor, and which entitles him to be preferred before other creditors, even those who have mortgages." La.Civ.Code Ann. art. 3186 (West 1952).

3. A petition to intervene would have been an appropriate means by which for Fontana to assert his rights in the *Cheatham* judgment under La.Rev.Stat.Ann. § 9:5001. *See Calk v. Highland Const. & Mfg.,* 376 So.2d 495, 499 (La.1979); *Roberts v. Hanover Ins. Co.,* 338 So.2d 158, 161 (La.App.1976); *Selly v. Watson,* 210 So.2d 113, 116 (La.App.1968).

District of Louisiana on February 24, 1981. His complaint, which named as defendants the City, the Mayor of New Orleans, the City Attorney, the Chief Administrative Officer of the City, Barham, Cotton, Dennis, and Jones, asserted a cause of action under 42 U.S.C. § 1983 (1976), as well as pendent state claims. Fontana alleged that the defendants "conspired with one and other [sic] to violate the constitutional right of plaintiff, LUKE FONTANA, in contravention of 42 U.S.C. § 1983." Record on Appeal, Vol. I at 2. In particular, Fontana complained that the municipal defendants violated his civil rights when the City "issued a check for the judgment and interest in the *Cheatham v. City of New Orleans* case and intentionally failed to put plaintiff's name upon said check as payee." *Id.* at 3. Fontana urged that this action by the City violated his "clearly established constitutional rights of due process, property, employment, free speech, as well as right to petition the government without intimidation or punishment," because the municipal defendants "knew or reasonably should have known that they were setting in motion a series of acts which would cause defendants BARHAM, COTTON, JONES and DENNIS to inflict the constitutional injuries to plaintiff which were suffered by plaintiff." *Id.* at 4. Fontana further averred that the municipal defendants "should have known or made it their business to find out the manner in which the attorney's fees were to be disbursed." *Id.* at 3. Fontana then prayed for an award of $1 million, plus attorneys' fees, costs, and interest. *Id.* at 6.

Barham and the City filed motions to dismiss Fontana's complaint under Fed.R. Civ.P. 12(b)(6). The district court initially denied these motions on May 13, 1981. On

May 18, 1981, the United States Supreme Court rendered its opinion in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).[4] Barham and the City, encouraged by the *Parratt* holding, again urged the motions to dismiss, which the district court then granted after oral argument.

In granting the defendants' motion to dismiss, the district court relied heavily upon the Supreme Court's rationale in *Parratt.* The district court observed that Fontana's alleged deprivation did not occur as a result of an established state procedure and noted that the state of Louisiana provided adequate remedies for redress. The court then stated:

> In essence, this case is a dispute over attorneys' fees. It is nothing more than a state court claim masquerading as a Section 1983 claim. The proper forum for plaintiff's claim, despite the Section 1983 trappings, is state court. There is no established state policy upon which defendant could have relied as depriving plaintiff of due process. The right to receive his fair share of attorneys' fees is one of a number of interests best protected by the state through its tort laws.

*Fontana v. Barham,* No. 81–761, slip op. at 3 (E.D.La. Jan. 6, 1982). Fontana now appeals from the district court's dismissal of his cause of action.

## II. ISSUES ON APPEAL

◼ The district court, apparently persuaded that the *Parratt* principle governed the instant situation, dismissed Fontana's claim under section 1983. In appellate briefs and at oral argument, the parties have expended considerable energy in de-

---

4. In *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), a Nebraska prisoner invoked 42 U.S.C. § 1983 (1976) to redress the negligent loss of a mail-order hobby kit by prison employees. The Supreme Court held that the prisoner's loss constituted a deprivation of property within the meaning of § 1983 and the fourteenth amendment. *Id.* at 535–536, 101 S.Ct. at 1913. The Court further held, however, that the deprivation did not violate the due process clause. *Id.* at 543, 101 S.Ct. at 1917. The Court noted that the prisoner's loss

resulted from the random and unauthorized act of a state employee rather than from an established state procedure. *Id.* at 539–543, 101 S.Ct. at 1915–16. Furthermore, the Court observed that Nebraska provided a tort remedy system adequate to compensate the prisoner for his loss. *Id.* at 543, 101 S.Ct. at 1917. Thus, the Court concluded that the prisoner had not stated a claim for relief under § 1983 because he had not demonstrated a deprivation of property under color of state law without due process of law.

fending or denouncing the application of *Parratt* to this case. We, however, find it unnecessary to address the difficult and important questions left unanswered by the *Parratt* decision, for we agree with the appellees that this case presents a more fundamental issue of section 1983 jurisprudence. In analyzing Fontana's asserted claim under section 1983, we must first determine whether the complaint properly sets forth a claim of a deprivation of rights, privileges, or immunities secured by the Constitution or laws of the United States caused by persons acting under color of state law. *Parratt*, 101 S.Ct. at 1912–13; *Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979); *Williams v. Kelley*, 624 F.2d 695, 697 (5th Cir. 1980), *cert. denied*, 451 U.S. 1019, 101 S.Ct. 3009, 69 L.Ed.2d 391 (1981). Thus, our initial task is to examine Fontana's complaint, focusing upon the nature of the protected interest, the nature of the alleged deprivation, and the state's involvement in that deprivation. Because we conclude that the complaint does not set forth a deprivation of a protected interest, we affirm the district court's dismissal of Fontana's claim without considering the reach of *Parratt*'s rationale.

## III. THE SECTION 1983 CLAIM

In judging the propriety of the dismissal of a section 1983 claim under Fed. R.Civ.P. 12(b)(6), we are guided by a familiar standard. "[A] motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would not be entitled to recover under any state of facts which could be proved in support of his claim." *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir.1976). Accordingly, in reviewing the district court's dismissal here, our task is to determine whether Fontana's allegations, if proven true, are sufficient to support a cause of action under section 1983.

Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

In order to state a cause of action under section 1983, a plaintiff's complaint must allege a deprivation of a right "secured by the Constitution and laws of the United States" resulting from conduct committed by a person acting under color of state law. *Parratt*, 101 S.Ct. at 1912–13; *Baker*, 443 U.S. at 140, 99 S.Ct. at 2692. Section 1983 "neither provides a general remedy for the alleged torts of state officials nor opens the federal courthouse doors to relieve the complaints of all who suffer injury at the hands of the state or its officers." *White v. Thomas*, 660 F.2d 680, 683 (5th Cir.1981).

Appellant Fontana asserts that his complaint is cognizable under section 1983 because it alleges a deprivation of his rights to due process, property, employment, free speech, and petition at the hands of municipal officials of the City. According to Fontana, this alleged deprivation occurred when the City officials, pursuant to a conspiracy with the other defendants, issued a check to Mrs. Cheatham in payment of the judgment in her favor, purposely omitting Fontana's name as a payee. By failing to include him as a payee on the check, Fontana claims, the City committed the sort of "constitutional tort" that section 1983 was designed to redress. We cannot agree.

Fontana asserts as his protected interests the "clearly established constitutional rights of due process, property, employment, free speech, [and] right to petition the government without intimidation or punishment." Record on Appeal, Vol. I at 4. In his brief, however, appellant concedes that without a violation of his property rights there would be no other violations, because the heart of his claim is the City's failure to include him as a payee on the judgment check. Brief for Appellant at 8–9. Fontana characteriz-

es the City's action as "the virtual theft of $200,000.00 in attorney's fees earned by plaintiff-appellant Fontana." *Id.* at 9. Fontana's basic claim, then, seems to be that he was deprived of his property interest in Mrs. Cheatham's judgment without due process of law, in contravention of the fourteenth amendment.

■ The exact nature of Fontana's property interest merits brief discussion. An attorney has no constitutional right to have himself listed as a payee on a check issued in judgment to a client. Basically, the only property right at stake here is Fontana's contractual right to the payment of attorneys' fees, which arises out of the contingent fee agreement between Fontana and Mrs. Cheatham. Fontana's right to attorneys' fees, the claim he holds against Mrs. Cheatham for the rendering of legal services to her, is simply a chose in action based upon the underlying contractual obligation between them. As such, Fontana's claim is a species of property protected by the fourteenth amendment. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 1154, 71 L.Ed.2d 265 (1982) (cause of action is property for purposes of fourteenth amendment; citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). *See also* Terrell, *Causes of Action as Property: Logan v. Zimmerman Brush Co. and the "Government-as-Monopolist" Theory of the Due Process Clause,* 31 Emory L.J. 491, 507–08 (1982).

■ Having determined that Fontana has asserted an interest protected by the Constitution—a fourteenth amendment property interest taking the form of a contractual claim for attorneys' fees—we must now parse Fontana's complaint in search of the remaining components of an action under section 1983. In order to state a claim cognizable under this section, Fontana must allege that he was deprived of his protected interest by conduct committed under color of state law. Thus, we now shift our focus to the alleged deprivation at issue here. Fontana asserts that he was deprived of his right to attorneys' fees when the City is-

sued its check to Mrs. Cheatham without including Fontana as a listed payee. We are unable to agree that this conduct constitutes a deprivation of property for purposes of section 1983 and the fourteenth amendment.

As noted above, the protected property interest involved here is Fontana's incorporeal contractual claim for attorneys' fees. It is undeniably true, as Fontana alleges, that when the City discharged its judgment debt to Mrs. Cheatham it did not pay Fontana's attorneys' fees; nevertheless, this failure by the City to include Fontana's name on the check can hardly be said to have deprived him of his contractual claim. Louisiana law provides a variety of mechanisms by which such a claim may be protected or reduced to possession. For example, La.Rev.Stat.Ann. § 37:218 (West Supp. 1983) preserves an attorney's right to collect earned fees out of the proceeds of a settlement between the client and the adverse party by granting to the attorney a privilege over other creditors. *See Saucier v. Hayes Dairy Products, Inc.*, 373 So.2d 102, 117 (La.1979) (on reh'g). A complementary statute, La.Rev.Stat.Ann. § 9:5001 (West 1951), provides an attorney with a privilege over other creditors on judgments obtained on behalf of a client. Additionally, an attorney has a cause of action for fees based on the employment contract with his client as well as a cause of action in conversion against anyone who unlawfully appropriates those fees. To the extent that the privileges afforded by La.Rev.Stat.Ann. § 37:218 and § 9:5001 are presently unavailable to Fontana, such adverse situation has resulted from his own procedural defaults. *Cheatham,* 391 So.2d at 1326; *see supra* at 223. As to the remaining avenues for pursuing his claim, contract and conversion, Fontana himself has acknowledged and exploited their existence by initiating actions in both federal and state courts, which are presently pending. All Fontana ever had was a claim for attorneys' fees, a claim he retains to this day. In no way has he been divested of his entitlement to pursue the enforcement of

that claim. His chose in action remains actionable; his property interest is still intact. We therefore find presented in this complaint no deprivation of Fontana's protected property interest.[5]

Although our considered evaluation of Fontana's complaint discloses a property interest protected by the fourteenth amendment, we are unable to ascertain any deprivation of that interest, much less a deprivation occurring by reason of conduct engaged in by officials acting under color of state law. *See Martinez v. California*, 444 U.S. 277, 283–85, 100 S.Ct. 553, 558–59, 62 L.Ed.2d 481 (1980).[6] We conclude, therefore, that Fontana can prove no set of facts in support of his claim that would entitle him to relief under section 1983. *See York v. City of Cedartown*, 648 F.2d 231, 232 (5th Cir.1981). Because Fontana's complaint does not state a cause of action cognizable under section 1983, the district court's grant of the defendant's motion to dismiss was appropriate. We therefore affirm that dismissal, while expressing no opinion as to the effect of *Parratt* on the claim at bar.

## IV. CONCLUSION

This is a quotidian, not a cosmic, case. We do not scythe section 1983 by concluding that Fontana's complaint is not cognizable under that section, for we hold only that Fontana has failed to assert the necessary deprivation of property under color of state law that would bring section 1983 into play. Where nothing has been lost, no judicial plunge into the curative waters of section 1983 is necessary. We need not venture further than to say that here there has been no deprivation, without which there can be no section 1983 relief. Thus, we leave Fontana as we found him—armed with the contractual claim for attorneys' fees he has had all along.

AFFIRMED.

---

**5.** This is not to say that a claim of a deprivation of a contractual right to attorneys' fees would never be cognizable under § 1983. For instance, a complaint alleging that state officials interfered with an attorneys' pursuit of such a claim by obstructing access to the judicial process might well involve the sort of deprivation of property encompassed by § 1983. Such circumstances, however, are not present here.

**6.** In *Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980), the survivors of a 15-year-old girl killed by a parolee brought an action for damages under § 1983 against the state officials responsible for the killer's parole-release decision. The complaint alleged that the state officials knew or should have known that the parolee's release created a clear and present danger that such an incident would occur and characterized the officials' action as reckless, willful, wanton, malicious, and negligent. The Supreme Court held, *inter alia*, that the state officials "did not 'deprive' appellants' decedent of life within the meaning of the Fourteenth Amendment." *Id.* at 285, 100 S.Ct. at 559. The Court concluded by observing that "it is perfectly clear that not every injury in which a state official has played some part is actionable under [§ 1983]." *Id.*