REVISED - June 14, 2001

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-30895
_____

SOUTHERN CHRISTIAN LEADERSHIP CONFERENCE,
LOUISIANA CHAPTER; ST. JAMES CITIZENS
FOR JOBS & THE ENVIRONMENT; CALCASIEU LEAGUE
FOR ENVIRONMENTAL ACTION NOW; HOLY CROSS
NEIGHBORHOOD ASSOCIATION; FISHERMEN &
CONCERNED CITIZENS' ASSOCIATION OF
PLAQUEMINES PARISH; ST. THOMAS RESIDENTS
COUNCIL; LOUISIANA ENVIRONMENTAL ACTION
NETWORK; LOUISIANA ASSOCIATION OF COMMUNITY
ORGANIZATIONS FOR REFORM NOW; NORTH BATON
ROUGE ENVIRONMENTAL ASSOCIATION; LOUISIANA
COMMUNITIES UNITED; ROBERT KUEHN; CHRISTOPHER
GOBERT; ELIZABETH E. TEEL; JANE JOHNSON;
WILLIAM P. QUIGLEY; TULANE ENVIRONMENTAL
LAW SOCIETY; TULANE UNIVERSITY GRADUATE
AND PROFESSIONAL STUDENT ASSOCIATION;
INGA HAAGENSON CAUSEY; CAROLYN DELIZIA;
DANA HANAMAN,

                              Plaintiffs-Appellants,

     versus

SUPREME COURT OF THE STATE OF LOUISIANA,

                              Defendant-Appellee.

_____

Appeal from the United States District Court for the
         for the Eastern District of Louisiana
_____

May 29, 2001

-1-

Before GOODWIN,[*] GARWOOD and JONES, Circuit Judges.

GARWOOD, Circuit Judge:

On April 16, 1999, the Plaintiffs[1] filed a complaint under 42 U.S.C. § 1983 in the United States District Court for the Eastern District of Louisiana, alleging that Louisiana Supreme Court Rule XX impermissibly suppresses Plaintiffs' freedoms of speech and association as protected under the First and Fourteenth Amendments. The complaint seeks injunctive and declaratory relief, costs and attorneys' fees. Defendant, the Louisiana Supreme Court (LSC),[2] filed two motions, asking the district court to dismiss the action under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, and, in the alternative, to dismiss for lack of standing. Oral argument was held on July 21, 1999, and on July 27, 1999, the district court granted the LSC's motions. This appeal by Plaintiffs followed. We affirm.

**Facts and Proceedings Below**

---

[*] Circuit Judge of the Ninth Circuit, sitting by designation.

[1] The plaintiffs in this case are composed of four general groups: law professors, law students, community organizations, and student organizations. For simplicity we will refer to all plaintiffs collectively as "Plaintiffs."

[2] Although it is well established that the Eleventh Amendment protects state supreme courts, *see Landers Seed Co., Inc. v. Champaign National Bank*, 15 F.3d 729 (7th Cir. 1994), the only defendant in this case is "the Supreme Court of the State of Louisiana." But, the LSC has refrained from advancing any argument that the Eleventh Amendment bars suit at this stage of the case, even after inquiry at oral argument.

In 1971, the LSC adopted the precursor to what is now Rule XX, which for the first time allowed the limited practice of law by students as part of supervised clinical education programs in Louisiana law schools. The rule allowed eligible law students in certain circumstances to appear in court or before administrative tribunals in a representative capacity on behalf of the state, its subdivisions, or any indigent person. In 1988, the LSC amended Rule XX to clarify that the rule also allowed students to represent indigent community organizations. *See* Louisiana Supreme Court Rule XX (1988). It is the LSC's most recent set of amendments to Rule XX that prompted the current suit. The rule as it exists now, and as it has always existed, operates only to set forth the limited circumstances under which unlicensed law students may engage in the practice of law in Louisiana; it has no other reach.

Over the years, several Louisiana law school clinics, including the Tulane Environmental Law Clinic (TELC), have supplied legal advice and representation to numerous individuals and various community organizations. In 1996, TELC agreed to represent St. James Citizens for Jobs and the Environment (St. James Citizens), a group of approximately one hundred low-income and working-class residents of St. James Parish. St. James Citizens was formed in response to a proposal by Shintech, a chemical manufacturer, to build a chemical plant in Convent, a small town in St. James Parish. The group was dedicated to resisting the construction of

the Shintech plant in their community and to raising public awareness of community environmental and health concerns related to the proposed plant. TELC represented St. James Citizens in a variety of ways: at hearings before the Louisiana Department of Environmental Quality, in state court, and by filing objections to the proposed plant with the EPA. Eventually the resistence of the local community to the new plant drove Shintech to reject Convent as its site, and the plant was located elsewhere in Louisiana.

According to the Plaintiffs' complaint,[3] TELC's representation of St. James Citizens induced significant criticism of the clinic from political and business leaders in Louisiana. The complaint alleges that various Louisiana business and political leaders, including Governor Foster, tried to convince Tulane University to curtail the endeavors of TELC. Tulane University proved unresponsive to this pressure, and so, according to the complaint, the "powerful political and business interests" opposed to the clinic turned their attention to the LSC. The complaint alleges that these political and business interests urged the LSC to prevent TELC and other clinics from continuing to aid community groups in giving voice to environmental and health concerns. The Plaintiffs allege several specific incidents that they claim

---

[3] For the purposes of a motion to dismiss for failure to state a claim, we assume that all of the allegations in the complaint are true. *Brown v. Nationsbank Corp.*, 188 F.3d 579, 585-86 (5th Cir. 1999).

document the political pressure exerted on both Tulane and the LSC, including phone calls from Governor Foster to the President of Tulane University, statements of Governor Foster at a meeting of the New Orleans Business Council requesting assistance in curtailing the efforts of TELC, various public criticisms of TELC by Governor Foster, a letter from a chamber of commerce organization urging the LSC to eliminate the TELC because the faculty and students involved were "in direct conflict with business positions," and letters from various business organizations, including the Business Council, the Louisiana Association of Business and Industry, and The Chamber/Southwest Louisiana, urging the LSC to eliminate TELC.

Allegedly in response to the concerns of the Governor and business groups, in the fall of 1997 the LSC launched an official investigation into the activities of TELC and Louisiana's other law school clinics. The results of this investigation have not been made public, but the Plaintiffs allege in their complaint that two Justices of the LSC have disclosed that the investigation did not reveal any inappropriate or unethical behavior by any person associated with any Louisiana law school clinic.

The LSC did in fact alter its rule concerning student practitioners, and on March 22, 1999, the Court announced the amendments that established the current form of Louisiana Supreme Court Rule XX. The amendments became effective April 15, 1999, and

by their terms "shall not impact or apply to any cases, and/or the representation of any clients, in which the representation commenced prior to the effective date of the amendments." The amendments to Rule XX altered the existing rule in two ways that are relevant to the present case. First, the rule's indigence requirements were tightened. The new rule allows representation of individuals or families only if their annual income does not exceed 200% of the federal poverty guidelines. The rule also now requires that any indigent community organization that wishes to obtain representation from a clinic must certify in writing its inability to pay for legal services, and at least fifty-one percent of the members of the organization must meet the income guidelines. The second major change to Rule XX involves the community outreach efforts of the law school clinics. Under the new rule, clinical student practitioners are prohibited from representing in the role of attorneys an otherwise qualified individual or organization if any person associated with the clinic initiated contact with that individual or organization for purposes of that representation.[4]

---

[4] Louisiana Supreme Court Rule XX section 10 now reads: "...no student practioner shall appear in a representative capacity pursuant to this rule if any clinical program supervising lawyer, staffperson, or student practitioner initiated in-person contact, or contact by mail, telephone or other communications medium, with an indigent person or indigent community organization for the purpose of representing the contacted person or organization."
The Commentary to section 10 reads, in relevant part, "...in furtherance of the Court's policy against

In response to the LSC's new Rule XX, the Plaintiffs filed this lawsuit on April 16, 1999.

In an opinion dated July 27, 1999, the district court dismissed the case for lack of standing and for failure to state a claim. The district court held that the complaint failed to establish the deprivation of any cognizable federal right. The court found that the indigence requirements did not implicate any freedom of association or speech, and that the limitation of clinical services to the poor was rationally related to a legitimate government purpose. *Southern Christian Leadership Conference v. Supreme Court*, 61 F.Supp.2d 499, 511 (E.D. La. 1999). The court noted that the LSC has broad power to regulate student practice, and held that in this context, the solicitation

> solicitation of legal clients generally, the ethical prohibitions against attorney solicitation, and the Court's view that law students should not be encouraged to engage in the solicitation of cases, Section 10, as amended, prohibits a student practitioner from representing a client who has been the subject of *targeted* solicitation by any law clinic representative." (emphasis added).

At oral argument, the Plaintiffs asserted that the current version of the rule prevents clinics from engaging in any kind of advertising or outreach. Our interpretation of this rule, however, is that the clinics must refrain from all targeted solicitation, and that initiating in-person or any other kind of direct contact with a potential client prohibits student representation in any matter related to the initiated contact. While the rule certainly discourages solicitous phone calls, letters, and in-person offers of legal services, our reading of the rule would not, for instance, prevent a clinic from merely distributing a generalized leaflet or flyer indicating that the clinic's legal services are available for those who meet the income requirements.

restrictions of Rule XX did not violate the First Amendment. The court reasoned: "While free speech rights do exist in this area, they are precariously perched when balanced against the imperatives of protecting the public and monitoring professional ethics. Particularly where student solicitation of potential clients is involved, concern for protecting the public grows considerably." *Id.* at 512. Applying rational basis review, the court held that the solicitation restrictions were justified because the restrictions were rationally related to the state's legitimate interest in protecting the public and monitoring professional ethics. *Id.* The court also dismissed the Plaintiffs' claims of viewpoint discrimination, holding that the political motivations of the LSC could not transform an otherwise permissible action into a constitutional violation. *Id.* at 513. Accordingly, the district court dismissed the Plaintiffs' claims in their entirety. This appeal followed.

**Discussion**

We review *de novo* a district court's dismissal for failure to state a claim under Rule 12(b)(6). *Leffall v. Dallas Independent School Dist.*, 28 F.3d 521, 524 (5th Cir. 1994). In considering a motion to dismiss, the complaint should be construed in favor of the plaintiff, and all facts pleaded should be taken as true. *Brown v. Nationsbank Corp.*, 188 F.3d 579, 585-86 (5th Cir. 1999). Motions "to dismiss for failure to state a claim [are] 'viewed with

disfavor, and [are] rarely granted.'" *Tanglewood East Homeowners v. Charles-Thomas, Inc.*, 849 F.2d 1568, 1572 (5th Cir. 1988) (quoting *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981)). A Rule 12(b)(6) dismissal will not be affirmed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 78 S.Ct. 99, 101 (1957). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). In the context of a 12(b)(6) motion in a section 1983 suit, the focus should be "whether the complaint properly sets forth a claim of a deprivation of rights, privileges, or immunities secured by the Constitution or laws of the United States caused by persons acting under color of state law." *Fontana v. Barham*, 707 F.2d 221, 225 (5th Cir. 1983). If there is no deprivation of any protected right the claim is properly dismissed. *Id.*

The Plaintiffs make a variety of claims, but their challenges to Rule XX fall into two basic groups. First, they claim that the rule is invalid on its face as an impermissible restriction of the First Amendment freedoms of the individuals and organizations that are parties to this suit. This first type of claim encompasses challenges to both of the substantive changes the LSC has made in Rule XX: the new, more specific indigence requirements as well as

the restriction on student representation in the role of an attorney of any group or individual whose represention has been solicited by any person associated with the clinic.

The Plaintiffs' second general claim is that regardless of whether Rule XX, on its face, restricts speech in violation of the First Amendment, the rule was enacted in retaliation for the clinics' and their clients' political speech and advocacy in the Shintech matter, and is therefore an impermissible form of viewpoint discrimination. The Plaintiffs' claim that the LSC amended Rule XX in direct response to pressure from business interests who were opposed to the TELC's environmental outreach and advocacy. This second claim depends heavily on the motivation of the LSC in enacting Rule XX.

In general, the LSC challenges the standing of all of the Plaintiffs in this suit, and alleges that none of the parties have suffered an injury in fact sufficient to justify this challenge to Rule XX. In response to the first set of claims, the LSC points out that the indigence requirements are not unlike those of several other states and the federal government, that the income level that disqualifies individuals from clinic representation is significantly higher than the standard used by many states and the federal Legal Services Corporation, and that since none of the client organizations are entitled to *pro bono* representation in civil cases there has been no actionable deprivation of any

protected right.

The LSC responds to the Plaintiffs' attack on the solicitation restrictions by arguing that there is no right of non-lawyers to represent others in litigation, that the litigation activities the clinics engage in cannot be considered "speech" and that therefore no party's "speech" or other rights have been impacted. The LSC responds to the viewpoint discrimination claims in much the same way, arguing that Rule XX does not affect any party's rights of association or free speech. The LSC argues that although attorneys may have speech and associational freedoms that protect *pro bono* representation of clients for political reasons, lay persons and law students have no such rights. Since Rule XX does not affect the ability of any attorney to represent *pro bono* clients, the LSC argues, the rule does not implicate any protected speech or associational interests.

Thus, this case involves four issues: (1) whether the Plaintiffs have standing; whether Plaintiffs have stated a claim that Rule XX, on its face, violates protected freedoms of speech and association by (2) the tightening of the indigence requirements or by the (3) imposition of solicitation restrictions on student representation in the role of an attorney; and (4) whether the LSC's promulgation of the rule constitutes actionable viewpoint discrimination in this context.

All of the Plaintiffs in this case fall into one of four categories. The first group is comprised of community organizations and individuals that have either been clients of the student clinics or who are concerned that they will not be able to obtain representation from the clinics in the future. The second consists of law professors and clinical law instructors who oversee or are otherwise involved in the student clinics. The third group consists of three Tulane University law students, two third year students who were "student practitioner" members of TELC during the 1998-99 academic year and one second year student who had been accepted as a TELC member and "student practitioner" for the 1999-2000 academic year. The fourth and last group consists of two student organizations, the Tulane Environmental Law Society (an organization of students that includes some of the students enrolled in the Tulane Environmental Law Clinic) and the Tulane Graduate and Professional Student Association.[5] Neither Tulane University nor TELC is a party to the suit; nor is any other university or law clinic.

To satisfy the standing requirement, a party must establish basic three elements. First, the plaintiff must have suffered an injury in fact. An "injury in fact" is an invasion of a legally

---

[5]Another individual party plaintiff below (Shearer) did not join in this appeal; consequently, we disregard him.

protected interest which is both (a) concrete and particularized, and (b) actual or imminent and not conjectural or hypothetical. *Lujan v. Defenders of Wildlife*, 112 S.Ct. 2130, 2136 (1992). Second, there must be a causal connection between the injury and the conduct complained of–in other words, the injury must be traceable to the defendant and not the result of the independent action of a third party. *Id.* Third, the injury must be redressible; it must be likely, as opposed to merely speculative, that a favorable decision will redress the plaintiff's injury. *Id*. The party invoking federal jurisdiction bears the burden of establishing these elements, but "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general factual allegations embrace those specific facts that are necessary to support the claim.'" *Id.* (quoting *Lujan v. National Wildlife Federation*, 101 S.Ct. 3177, 3189 (1990)).

According to the complaint, Rule XX directly regulates the operations of law school clinics in Louisiana and significantly alters the ways in which those clinics can permissibly function. Further, the complaint alleges that under the new rule, several of the client organizations will hereafter be unable to obtain representation from the clinics. Given the expansive and deferential way in which we construe pleadings at this stage of a suit, we find that Rule XX has enough of an impact on at least some

of the Plaintiffs so as to constitute an injury in fact. At least some of the Plaintiffs have standing to bring each type of claim currently before the court. Accordingly, we next address the merits of the Plaintiffs' claims. We begin with the Plaintiffs' claim that the indigence and solicitation restrictions, on their face, improperly infringe on the Plaintiffs' rights under the First Amendment.

*Indigence Requirements*

Rule XX now requires that clinical student practitioners represent only those individuals who are "indigent," which is defined as having an annual income that is less than 200% of the current federal poverty guidelines as established by the Department of Health and Human Services. Louisiana Supreme Court Rule XX, section 4. As the commentary to Rule XX points out, applying the current federal poverty standards the clinics are permitted to represent an individual if his annual income is less than $16,480, and may represent a family of four if the family's annual income is less than $33,340. *Id.* Contrary to the Plaintiffs' assertions, the rule does not require individuals to provide detailed financial information to obtain representation–the rule simply states that the clinics may only represent individuals who fall within the income guidelines. The Plaintiffs claim that this aspect of the rule subjects their clients to invasive discovery intended to obtain embarrassing financial information. However, the LSC has

always required that student practitioners represent only "indigent" community organizations. *See* Louisiana Supreme Court Rule XX, section 3 (1988). Also, the assertion that improper discovery requests will dramatically increase is clearly based almost entirely on speculation, and in any event can be adequately addressed in any particular instance in which it does arise. This part of the rule does not, on its face, restrict speech in any way other than to limit clinical representation to clients who are poor.

The indigence requirements alone implicate no speech interests, and are simply subject to Equal Protection requirements. Classifications based on wealth alone are not subject to strict scrutiny. *See San Antonio Independent School District v. Rodriguez*, 93 S.Ct. 1278, 1293-94 (1973). Strict scrutiny, therefore, is inappropriate in a facial challenge of this part of Rule XX. Under rational basis review, the indigence requirements are valid. They are rationally related to one of the stated purposes of Rule XX: providing representation to those who cannot afford it for themselves. *See* Louisiana Supreme Court Rule XX, section 1. Because the indigence requirements do not, on their face, implicate any speech interests the district court was correct to dismiss this part of the Plaintiffs' challenge to Rule XX.

### *Solicitation Restrictions*

The Plaintiffs argue that section 10 of Louisiana Supreme Court

Rule XX is an impermissible restriction on their rights of free speech and association protected by the First Amendment. While this may be a closer question than the challenge to the indigence requirements, we conclude that section 10 does not impermissibly restrict the Plaintiffs' speech.

The First Amendment prohibits the government from enacting solicitation restrictions that prevent attorneys from offering their services *pro bono* to individuals or groups. For example, the Supreme Court held in *NAACP v. Button*, 83 S.Ct. 328 (1963), that Virginia could not prohibit the NAACP from advising individuals of their legal rights and referring those individuals to lawyers. And, in *In re Primus*, 98 S.Ct. 1893 (1978), the Court held that a lawyer could not be constitutionally subjected to discipline for informing members of the public of their legal rights and offering free legal services on behalf of the ACLU. The Plaintiffs cite both *Button* and *Primus* for the proposition that all *pro bono* legal advocacy (even when conducted by persons who are not licenced attorneys) is protected speech that cannot be infringed without a compelling state interest.

A careful examination of those decisions reveals, however, significant differences from the restrictions in the present case. For example, in both *Button* and *Primus*, the solicitous speech was itself prohibited. In *Button*, under Virginia's statute solicitation was a misdemeanor, and the penalties for solicitation included imprisonment for up to six months. *Button*, 83 S.Ct. at 334 n.7 (citing Va. Code §

54.82 (1958)). Similarly, Edna Primus's letter soliciting a client on behalf of the ACLU was, in and of itself, a violation of the South Carolina bar's disciplinary rules. *See Primus*, 98 S.Ct. at 1898-1900. In both cases, the solicitous speech itself was prohibited, and engaging in such speech subjected the speaker to criminal or disciplinary sanctions.

In contrast, nothing in Rule XX prohibits or prevents speech of any kind. Rule XX does not prevent the clinics or their members from engaging in outreach, or even from contacting particular clients, advising them of their rights, and offering and then proceeding to represent those clients. The rule only prohibits the non-lawyer student members of the clinics from representing *as attorneys* any party the clinic has so solicited. Since the rule does not directly regulate speech and the ability of unlicensed students to practice law need not exist at all, it is inaccurate to describe the restrictions in Rule XX as impairing or prohibiting speech. No one is required to participate in any of the clinical programs, and even if someone chooses to, they are not punished for or prohibited from speaking. At most, Rule XX indirectly discourages speech—by refusing the educational experience of acting *as an attorney* in a particular matter to unlicensed student practitioners in clinics whose members or employees engaged in solicitation of that matter.

The impact of Rule XX's section 10 (see note 4, *supra*) on the educational experience is far from extreme. The students are not

prohibited from or restricted in working on clinic solicited cases as paralegals, as legal (or factual) researchers, or as trial assistants,[6] and they are not subject to discipline for contacting potential clients and informing them of both their rights and that free legal representation is available from the clinics. And, targeted solicitation only implicates the students' representation as attorneys of that particular client—students would remain free to represent as an attorney other clients who were not solicited by the clinic.[7] These limitations are a far cry from the criminal and disciplinary sanctions invalidated by the Supreme Court in *Button* and *Primus*.[8]

The other major difference between this case and *Button* and *Primus* is, of course, that the student practitioners are not licensed members of the bar. The LSC has a heightened interest in overseeing the

---

[6] Indeed, the students are barred only from serving in an attorney's representative capacity by Rule XX, and could perform a wide variety of legal related work or research, so long as it was reviewed and any formal documents (such as pleadings, motions, agreements or the like) were actually submitted by a licensed supervising attorney.

Nothing in Rule XX (or its challenged amendments) in any way broadens the categories of conduct which constitute the practice of law so as to require one engaging in same to either be a licensed attorney or to come under the exemption for student practitioners provided by Rule XX since 1971.

[7] And, of course, the clinic's supervising attorneys could continue to represent any client they wish, including clients who had been solicited.

[8] The Court in *Primus* did not hold that all solicitation restrictions were invalid. Instead, the Court noted that in some situations solicitation restrictions on practicing attorneys would be permissible, so long as those restrictions were narrowly tailored and did not impermissibly abridge associational freedoms. *Primus*, 98 S.Ct. at 1908.

practice of law by non-attorneys in Louisiana.  Indeed, the LSC need not have ever allowed–and did not at all until relatively recently–non-attorneys to participate in the actual practice of law in Louisiana. The ability of students to represent clients as attorneys in legal matters is entirely the relatively recent creation of the LSC and continues to exist entirely at the LSC's complete discretion.[9]  The clinical programs are an educational benefit that the LSC has decided to grant to Louisiana law students.

Rule XX's solicitation restrictions do not prohibit or punish speech, they merely limit one aspect of the participation of unlicensed students in clinical education programs–namely doing what only an attorney can otherwise do–to representing as attorneys nonsolicited clients.  And, this limitation is entirely viewpoint neutral.[10]  Rule XX is significantly different from the criminal or quasi-criminal prohibitions of speech invalidated by the Supreme Court in *Button* and *Primus*.  We conclude that the district court was correct to subject section 10 of Rule XX to rational basis review.  The stated rationale

---

[9]  Indeed, the regulation of the practice of law in Louisiana is uniquely within the power of the Louisiana courts: "The right to practice law in the state courts is not a privilege or immunity of a citizen of the United States.  It is limited to those who are licensed for that purpose.... The supreme court possesses the power, irrespective of the legislature, to determine the qualifications of those who apply for admission to practice law." *State v. Kaltenbach*, 587 So.2d 779, 784 (La.App. 3 Cir. 1991) (citing *State v. Rosborough*, 94 So. 858 (1922)), *writ denied*, 592 So.2d 1332 (1992).

[10] On its face, section 10 of Rule XX is unquestionably viewpoint neutral.  We address below the Plaintiffs' claim that the rule was, nevertheless, motivated by a desire to suppress a particular viewpoint.

for section 10 is to further "the Court's policy against solicitation of legal clients generally, the ethical prohibitions against attorney solicitation, and the Court's view that law students should not be encouraged to engage in the solicitation of cases...." Louisiana Supreme Court Rule XX section 10, Commentary. Section 10 is rationally related to the LSC's goal of discouraging solicitation generally. The nature of the solicitation provision, combined with the unique status of the clinics' student practitioners, convince us that section 10 of Rule XX is a constitutional exercise of the LSC's regulatory power.

By allowing unlicensed law students at clinics to practice law under limited conditions, the LSC furthers two goals: providing legal representation to poor Louisianians and providing educational opportunities to Louisiana law students. *See* Louisiana Supreme Court Rule XX section 1 ("As one means of providing assistance to clients unable to pay for [legal] services ... the following rule is adopted.").

In *Legal Services Corporation v. Velazquez*, 121 S.Ct. 1043, 1049–51 (2001), the Supreme Court invalidated a congressional funding restriction that prohibited Legal Services Corporation attorneys from participating in cases attempting to reform or challenge a state or federal welfare system. The Court held that the restrictions unconstitutionally regulated private expression in an arena in which Congress had funded Legal Services Corporation attorneys to represent indigent litigants. *Velazquez*, 121 S.Ct. at 1051–52. A major concern of the Court was that the restrictions would do more than simply prevent

representation in certain classes of cases; the restrictions, the Court noted, would interfere with attorneys' advocacy of their clients by preventing them from making certain arguments in particular cases: "Restricting [Legal Services Corporation] attorneys in advising their clients and in presenting arguments and analyses to the courts distorts the legal system by altering the traditional role of the attorneys.... By seeking to prohibit the analysis of certain legal issues and to truncate presentation to the courts, the enactment under review prohibits speech and expression upon which courts must depend for the proper exercise of the judicial power." *Id*. at 1050-51. The fact that a Legal Services Corporation lawyer could withdraw from a representation if a problem arose did not, according to the Court, alleviate the problems the rule caused. *Id*. at 1051.

In *Velazquez*, the Court noted that "Congress was not required to fund a [Legal Services Corporation] attorney to represent indigent clients; and when it did so, it was not required to fund the whole range of legal representations or relationships. The [Corporation] and the United States, however, in effect ask us to permit Congress to define the scope of the litigation it funds to exclude certain vital theories and ideas." *Velazquez*, 121 S.Ct. at 1052. In contrast to the regulations in *Velazquez*, Rule XX does not limit speech by the clinics' members—any person associated with a clinic can engage in any sort of outreach activity and can even solicit individual clients. Indeed, the clinics are allowed to represent clients so solicited, with one

-21-

caveat—the students, who are not lawyers, may not represent, *as lawyers*, any client so solicited. Unlike the regulations struck down in *Velazquez*, Rule XX imposes no restrictions on the kind of representations the clinics can engage in or on the arguments that can be made on behalf of a clinic client. Rule XX applies to all clinic students equally, and is entirely viewpoint neutral. Nothing in Rule XX implicates the proper functioning of the judicial system. None of the special considerations present in *Velazquez* apply in the context of this case.

The parties in *Button* and *Primus* were licenced attorneys, the student clinical practitioners are not. Instead, they are the beneficiaries of an educational program that the LSC has decided to permit and which the LSC could end at will. Moreover, unlike the criminal sanctions and disciplinary penalties involved in *Button* and *Primus*, the restrictions imposed by Rule XX do not regulate or prohibit speech directly. And, none of the special concerns mentioned by the Court in *Velazquez* are implicated by Rule XX. The First Amendment does not prohibit the LSC from imposing this viewpoint neutral limit on the scope of unlicensed law students' educational use, as attorneys, of the Louisiana courts.

*Viewpoint Discrimination and Retaliation*

Our holding that the solicitation requirements are facially permissible does not end our inquiry. The Plaintiffs also claim that the enactment of Rule XX constitutes an unconstitutional attempt by the

Court to suppress political speech it has deemed undesirable. Specifically, the Plaintiffs allege that the Governor and various business interests pressured the Court into enacting Rule XX because of the success of the clinics and community organizations in their attempts to resist the construction of chemical plants in their communities. The Plaintiffs argue that even if Rule XX is an otherwise permissible restriction, the Court's allegedly suppressive motivation in enacting Rule XX transforms the rule into an unconstitutional action. Since the rule is facially viewpoint neutral and is not otherwise constitutionally objectionable, this claim depends entirely on the effect the Court's alleged motivation has on the constitutionality of Rule XX.

Although the jurisprudence in this area is less than clear, there is some support for the Plaintiffs' contentions that the motivation of a state actor can transform an otherwise permissible action into a violation of the First Amendment. The Supreme Court has held that the motivation of a legislature or other state actor can be the primary factor in the constitutional analysis of state action in other areas of First Amendment law, such as cases involving the Establishment Clause or the termination of public employees because of protected speech. *See, e.g.*, *Edwards v. Aguillard*, 107 S.Ct. 2573 (1987) (striking down a state statute requiring equal time for "creation-science" based on the motivation of the legislature as indicated in the statute's legislative history); *Perry v. Sindermann*, 92 S.Ct. 2694, 2698 (1972)(finding a suit by a junior college professor whose contract had not been renewed,

allegedly because of the professor's public criticism of the Board of Regents, to present a "bona fide constitutional claim").

In *Cornelius v. NAACP Legal Defense and Education Fund*, 105 S.Ct. 3439 (1985), the Supreme Court upheld as against a facial challenge an executive order which limited participation in a charity drive among federal employees (the "CFC") to organizations that provided direct health and welfare services to individuals or their families. The order excluded legal defense and political advocacy groups. The district court and the court of appeals had sustained the facial challenge, but had not addressed the argument of the plaintiffs (respondents), the NAACP Legal Defense & Education Fund and other legal defense funds, that they were excluded from the CFC because the government disagreed with their viewpoints. The Supreme Court reversed the decisions of the lower courts facially invalidating the order. The court went on to state, however:

> "While we accept the validity and reasonableness of the justifications offered by petitioner for excluding advocacy groups from the CFC, those justifications cannot save an exclusion that is in fact based on the desire to suppress a particular point of view."
> . . . .
>
> ". . . the purported concern to avoid controversy excited by particular groups may conceal a bias against the viewpoint advanced by the excluded speakers. . . .Organizations that do not provide direct health and welfare services, such as the World Wildlife Fund, the Wilderness Society, and the United States Olympic Committee, have been permitted to participate in the CFC. . . .the issue whether the Government excluded respondents because it disagreed with their viewpoints was neither decided below nor fully briefed before this Court. We decline to decide in the first instance whether the exclusion of respondents was impermissibly

-24-

motivated by a desire to suppress a particular point of view. Respondents are free to pursue this contention on remand." *Id*. at 3454.

This language in *Cornelius* provides the Plaintiffs with some support for their claim, but is not controlling in the present context. *Cornelius* involved a rule which actually *prevented* certain groups from speaking. The executive order in *Cornelius* was viewpoint neutral, but it did exclude speakers from a nonpublic forum on the basis of both their identity and the content of their speech. *Id*. at 3451. Those speakers were shut out of a forum of which they might otherwise have availed themselves, and in that way the order directly regulated speech within that forum. Other speakers, such as the Wilderness Society, were not excluded. Rule XX, in contrast, does not create a forum for speech,[11] does not exclude any speaker from any opportunity to speak, and does not in any way prohibit or punish speech. Nor does Rule XX in any way distinguish between speakers on the basis of the content of their message. There is no "picking and choosing" here. Instead, the Plaintiffs allege, the rule makes it somewhat more difficult to obtain and to provide free legal services. While *Cornelius* does indicate that an individual or group cannot be excluded from even a nonpublic forum on the basis of viewpoint, we do not agree with the Plaintiffs that the case requires us to examine the motivation underlying every governmental decision for viewpoint neutrality.

---

[11] Nor do Plaintiffs argue that Rule XX creates any kind of forum for speech.

Additionally, the Plaintiffs' assertion that *Cornelius* stands for the proposition that the motivation or purpose of a state actor can turn *any* state action into an unconstitutional suppression of speech or viewpoint is belied by the Court's decision in *Rust v. Sullivan*, 111 S.Ct. 1759 (1991). In *Rust*, the Supreme Court upheld Department of Health and Human Services regulations that attached several conditions on the receipt of federal funds for Title X projects. Among the regulations were requirements that Title X projects refrain from providing counseling concerning abortion as a method of family planning, and programs that received Title X money were expressly prohibited from referring a pregnant woman to an abortion provider, even upon request. *Rust*, 111 S.Ct. at 1765 (citing 42 C.F.R. § 59.8(a)-(b) (1989)). The Supreme Court held that the government was entitled to "refus[e] to fund activities, including speech, which are specifically excluded from the scope of the project funded." *Id.* at 1773. The restrictions on speech upheld in *Rust explicitly* prohibited the expression of a particular viewpoint by program participants. In later cases, the Court has limited the holding of *Rust* to occasions in which the government itself is the speaker, or to "instances, like *Rust*, in which the government 'used private speakers to transmit information pertaining to its own program.'" *Velazquez*, 121 S.Ct. at 1048 (quoting *Rosenberger v. Rector and Visitors of Univ. of Va.*, 115 S.Ct. 2510, 2519 (1995)).

There are differences between *Rust* and the present case. The LSC is not itself a speaker-there is no government message that the clinics

are relaying to their clients. And, Rule XX does not clearly qualify as an attempt by the LSC to use private speakers to transmit information pertaining to its own program. On the other hand, the LSC need not have allowed any unlicensed student to serve in an attorney representative capacity. The Court has chosen to allow the unlicensed student clinic members to engage in the practice of law in Louisiana under certain conditions. Although the court is not funding the clinics, the LSC is supporting those clinics by its allowance of unlicensed students' representation in the role of attorneys of clinic clients—an allowance that the Court was under no obligation whatsoever to grant.

The analogy between *Rust* and the present case is an imperfect one, but we think that *Rust*, while not controlling, informs our current decision. The fact that the state decides to fund or support a program does not give the government *carte blanche* to restrict the rights of program participants. *See Velazquez*, 121 S.Ct. at 1049-50; *Rust*, 111 S.C. at 1776. But, at the same time, the LSC must be able to define the scope of the law practice that unlicensed students undertake as part of the clinical programs. We accordingly turn to an examination of the effects of Rule XX and the alleged motivation of the LSC in its enactment. The issue here is whether the Plaintiffs' allegations of suppressive purpose, if true, would render Rule XX unconstitutional.

The Plaintiffs have alleged facts that may arguably support their claim that the LSC reacted to pressure from the Governor and business interests who bore the TELC significant animus. But the Plaintiffs'

allegations of improper purpose, while extensive, do not focus on the LSC. Although the Plaintiffs have certainly alleged animus on the part of the Governor and various business groups, there is no express allegation, nor do the facts alleged tend to suggest, that the LSC itself bore any particular ill will towards any of the Plaintiffs. Instead, the complaint in essence alleges that the LSC gave in to pressure from others to restrict the activities of the student clinics. The Plaintiffs allege that Rule XX was enacted to silence the TELC, but the rule is of wholly general and prospective application–it applies to all student legal clinics in Louisiana, not just TELC. Plaintiffs can be understood to have asserted that the LSC ultimately bore some character of ill will towards the TELC, at least on account of its activities having generated unwanted political pressure on the LSC, and that the LSC accordingly desired to defuse the political pressure, and to diminish the likelihood of the recurrence of similar activities in the future, by enacting the challenged amendments to Rule XX. Such an alleged motivation on the part of the LSC does not, however, transform Rule XX into an unconstitutional state action.

The fundamental purpose behind the First Amendment is to promote and protect the free expression of ideas, unfettered by government intrusion. We are convinced, however, that Rule XX will produce no legally significant chilling effect on the expressive speech of any of the Plaintiffs in this case. Rule XX does in effect impose some restrictions on clinic activities, and, according to the complaint, the

-28-

solicitation restrictions and the new, more strict indigence requirements will result in a decrease in the availability of clinical representation for some of the Plaintiffs. Some of the client organizations in this case may indeed find it somewhat more difficult to qualify for clinic representation in the wake of Rule XX, and the clinics themselves will either be forced to change their educational model or to refrain from soliciting particular clients. But, even this minimal impact on the clinics and the client organizations is "suppressive" *only in comparison to the earlier version of Rule XX.* This is a crucial distinction. We conclude that a refusal to promote private speech is not on a par with a regulation that prohibits or punishes speech, or which excludes a speaker from a public or nonpublic forum.[12] Rather than stamping out or suppressing private speech, the LSC's action has reduced the availability of support for such speech, and the LSC-the highest judicial body in Louisiana exercising its undisputed power and responsibility-has reduced this support by *an across-the-board*, *wholly prospective and viewpoint neutral general rule.* We are convinced that the new version of Rule XX will not silence any group or individual's speech except to the extent that it ceases to support private speech. The United States Constitution does not require the LSC to continue its support for the clinical education programs until its motives are shown to be pure. The LSC need not have ever

---

[12] Nor does Rule XX impermissibly interfere with the content of the private speech promoted as in *Velazquez.*

allowed unlicensed students to practice law in Louisiana, and indeed did not do so until 1971, and that Court can end the program at any time, and for any reason.[13]  The motivation of the LSC, in this limited context, is irrelevant.  As the Supreme Court stated in *Rust*, "[t]his is not a case of the Government 'suppressing a dangerous idea,' but of a prohibition on a project grantee or its employees from engaging in activities outside of the project's scope." *Rust*, 111 S.Ct. at 1772-73. The LSC's amendment of Rule XX does not, under these circumstances, constitute impermissible viewpoint discrimination in violation of the First Amendment.

## Conclusion

For the foregoing reasons, the judgment of the district court dismissing the action is

AFFIRMED.

---

[13]  At oral argument, the Plaintiffs asserted that even a complete refusal to allow unlicensed students to practice law in Louisiana could be considered a violation of the First Amendment if the change was motivated by a desire to suppress political speech.  We do not agree that the First Amendment requires the LSC to continue, in perpetuity, an optional program that allegedly benefits a particular political viewpoint once that program has begun.