**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 01-10649
_____

JAMES T. HENRISE,

Plaintiff-Appellant,

versus

JOHN D. HORVATH; CLARENCE V. JOHNS; WARREN BOX; ROBIN FLORES; CITY OF DESOTO, TEXAS

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Texas
(3:97-CV-2472-L)
_____
June 28, 2002

Before WIENER and DENNIS, Circuit Judges, and LITTLE[*], District Judge.

WIENER, Circuit Judge[**]:

The district court dismissed the action of Plaintiff-Appellant James Henrise pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)") for failure to state a claim on which relief could be granted. Henrise appeals the district

---

[*] Chief Judge of the Western District of Louisiana, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

court's dismissal of his action, which asserted claims under 42 U.S.C. § 1983 and § 1985(2) against Defendants-Appellees John Horvath, Clarence Johns, Warren Box, Robin Flores (collectively, the "individual defendants"), and the City of DeSoto, Texas ("the City"). We affirm the district court's dismissal of Henrise's § 1983 claims against all the defendants, but reverse the court's dismissal of his § 1985(2) claim against the individual defendants only.

## I. Facts and Proceedings

We set forth the operative facts as they appear in Henrise's Second Amended Complaint, which is the version of the facts that the district court considered when it granted the defendants' Rule 12(b)(6) motion to dismiss the action. For purposes of ruling on such a motion, the district court properly accepted as true — as do we — the facts as they were set forth in the complaint. We neither recite nor consider, however, arguments and conclusional allegations in the complaint.

Henrise was hired as a police officer by the City of DeSoto, Texas, in January 1985. He received training and gained experience by serving for substantial periods in both the Criminal Investigations Division ("CID") and Special Investigation Unit ("SIU"). Henrise eventually received the "Top Cop" award from the DeSoto Citizens Police Academy Alumni. He holds a Master Peace Officer Certification from the Texas Commission on Law Enforcement Officer Standards and Education, and retains his departmental

2

seniority in the rank of sergeant. While working in the SIU, Henrise was under the command of Lt. P. Paul Pothen. As part of its official function, the SIU undertook investigations into public corruption, vice, narcotics, and organized crime.

In August 1994, Defendant Horvath was confirmed as the Chief of Police of the City of DeSoto. Based on their work in the SIU during the early part of 1995, Henrise and Pothen formed the good faith belief that Horvath was involved in serious misconduct which had criminal implications. This included, but was not limited to, the release of confidential police murder investigation files to a civilian investigator, the removal of and failure to return material physical evidence related to a murder investigation, and the acceptance of both public and private funds to finance a family vacation to Europe, purportedly on "police business." In addition, the SIU uncovered what appeared to it to be significant public corruption, including bribery, surrounding high ranking DeSoto public officials and their cohorts.

In the spring of the following year, Horvath, acting as Chief of Police, had a private meeting with Henrise. In that meeting, Chief Horvath demanded that Henrise provide him with any known information that was adverse to Pothen, and to observe Pothen and report back any newly discovered adverse information. Henrise expressly refused Horvath's demand then and there. Henrise alleges in his complaint that it was during this meeting that he first became aware that Horvath was searching for a way to terminate

3

Pothen, and that Horvath was first put on notice, by Henrise himself, that he would not assist the chief in that scheme, but instead would oppose it.

Henrise and Pothen furnished detailed information to the DeSoto City Manager, Ron Holifield, about the misconduct in which they believed Chief Horvath had engaged, but Holifield did not act on those complaints. At or around the same time, a city employee, Linda Bertoni, filed a 19-page sworn statement with the City Manager, the City Mayor, and City Council members in which Police Chief Horvath's misconduct was set out in detail. The City did not investigate Horvath's activities in response to Bertoni's notification, either.

According to Henrise, the "end result" of his and Pothen's complaint about Horvath was that both officers were placed on administrative leave by Horvath, and were charged in a complaint regarding an unrelated search conducted by the SIU. On the advice of counsel, Henrise agreed to accept a one-day suspension to resolve the matter, and then return to duty with the same rank and seniority. Henrise has consistently maintained that he did absolutely nothing wrong regarding the search in question, and only accepted the suspension so that he could return to police work. Pothen, on the other hand, was fired, then pursued his appellate remedies under state civil service laws and later sought other remedies in federal court. During this time, Henrise maintained a strong association with Pothen, both as a fellow officer and close

4

police friend. Henrise stresses that police officers rely on each other for emotional and physical support both on duty (including in life-threatening situations) and off.

After Pothen was fired, he placed the City and the individual defendants on notice that he would challenge his termination. Henrise contends that all the individual defendants were aware that Henrise maintained a close personal relationship with Pothen and knew that he would testify favorably on Pothen's behalf and adversely to the City and Horvath.

When Henrise returned to work after his one-day suspension, he reported to defendant Warren Box, Captain of Police for the DeSoto Police Department. Even though Henrise's status was for regular duty, Box assigned him to such demeaning tasks as enforcing handicapped parking, serving as municipal court bailiff, filing citations, and moving boxes. Henrise emphasizes that he was a highly trained investigator with seniority in his position, characterizing as "menial" all of the tasks to which he was assigned by Box.

Henrise maintains that the assignments of degrading tasks by Box were only the first in a long series of retaliatory and harassing acts against him. Henrise alleges that these acts were done in an effort to punish him for his association with Pothen, to intimidate him into not testifying on Pothen's behalf, and to retaliate against him for continuing to associate with Pothen and vowing to provide truthful testimony on Pothen's behalf in federal

court. Other alleged harassing and retaliatory instances cited by Henrise include the initiation by Box of a "baseless internal affairs investigation" against Henrise for allegedly violating departmental regulations regarding the security of records (access to which Henrise, a senior sergeant in the department, was entitled), and Box's denial of Henrise's right to bid on normal patrol shift assignments.

In an effort to confirm his beliefs about why he was being singled out and punished, Henrise met with Horvath to discuss the matter. Henrise asserts that Horvath became angry during this meeting, and "tersely berated" Henrise "in unmistakable terms" for not severing his relationship with Pothen. In the same meeting, Horvath characterized Pothen in vulgar language and referred to a meeting between Pothen and Henrise that had taken place a week earlier in a local hotel. That reference made Henrise realize that Horvath was tracking Henrise's off-duty time spent with Pothen, and convinced Henrise that the actions taken against him were based directly on his association with Pothen.

Henrise asserts that after this meeting with Horvath, the following events took place, which Henrise maintains were either retaliatory or designed to discourage him from testifying on Pothen's behalf or destroy his credibility if he did testify: (1) Horvath rescheduled Henrise's shift, assigning a sergeant with less seniority than Henrise to supervise him; (2) Henrise was again denied the opportunity to bid for a supervisory position on a

6

patrol shift; (3) a "false" complaint was filed against Henrise with the Civil Service Commission; (4) an intimidating conversation with defendant Clarence V. Johns, a Captain with the DeSoto Police Department, took place on the same day that Pothen filed his federal lawsuit, the thrust of which conversation was disapproval of Henrise's continued association with Pothen; (5) an article was approved by Captain Johns and then published in the <u>Dallas Morning News</u>, containing "false information" about an "unnamed officer," whom anyone familiar with the DeSoto police department would recognize as Henrise; and (6) Box commenced yet another internal affairs investigation of Henrise concerning a class "C" ticket that Henrise was "superficially involved with." (Contrary to customary policy, avers Henrise, defendant Robin Flores, the Records Division Supervisor for the DeSoto Police Department, elected to assert a formal internal affairs complaint instead of contacting Henrise to resolve the "trivial matter.") The investigator of this complaint concluded that Henrise should be cleared of the allegations, but Box and Horvath re-opened the investigation, forced a second interview with the investigator that included defendant Johns, with the objective, according to Henrise, of sustaining the "baseless" complaint against Henrise.

Henrise filed a formal grievance with City Manager Holifield, against defendant Johns (presumably for his approval of the <u>Dallas Morning News</u> article, although the complaint does not say). As with the complaint filed against Horvath, however, Henrise received

7

no response from the City.

Horvath left the position of Police Chief, and was replaced by acting police chief W.M. Broadnax. When Henrise went to Broadnax to inquire about the status of "a complaint Henrise had filed against Horvath,"[1] Broadnax reportedly "exploded" at Henrise, swearing at him and referring to Pothen's attorney by name in his anger, thereby evidencing, Henrise asserts, Broadnax's negative opinion of Pothen, Henrise, and Pothen's federal lawsuit in which Henrise was to be a material witness.

Henrise filed "several" complaints with the City against Horvath, Johns, and later Broadnax. Henrise alleges that each such complaint constituted actual notice to the City that Henrise was being subjected to harassment that amounted to retaliation and punishment. None of the complaints were investigated or acted on by the City.

In the fall of 1997, Henrise filed his complaint in the district court, invoking 42 U.S.C. §§ 1983 and 1985, and naming as defendants Horvath, Johns, Box, and Flores in their individual capacities, and the City of DeSoto. Henrise sued the individual defendants under § 1983 "pursuant to the First and Fourteenth Amendments" "for retaliating against him and punishing him for his continued association with Pothen, and for their conspiracy which

---

[1] Henrise's petition neither clarifies which "complaint against Horvath" Henrise was inquiring about, nor specifies to whom that complaint was made.

8

was carried out and designed for that purpose." He also sued the individual defendants under § 1985(2) "for their conspiratorial attempts to prevent him from testifying in the litigation brought in federal court by Pothen, and for punishing [Henrise] regarding the same." Last, under § 1983, he sued the City pursuant to the First and Fourteenth Amendments for "the actions of its policymaker ⸺ the police chief ⸺ and for knowingly permitting the individual Defendants to retaliate against, threaten, punish, and intimidate [him]."

After the filing of a series of amended complaints, answers, counter-claims, motions to dismiss, a motion for summary judgment, and responses thereto, the district court ruled for the first time on the dismissal motions of the individual defendants and the City. With respect to the City, the district court denied the motion to dismiss without prejudice, and required Henrise to file an amended complaint that would "meet the basic requirements for pleading municipal liability under Section 1983." With respect to the individual defendants, the court required Henrise to file a reply to their defense of qualified immunity, "enumerating the specific conduct of each Defendant on which Plaintiff predicates his claims for which each Defendant should be held personally liable."

Henrise filed a Second Amended Complaint, which was his third attempt to detail his case against the defendants, the district court having highlighted the deficiencies of his earlier attempts. In response, all defendants submitted motions to dismiss, to which

9

Henrise had an opportunity to respond. Having before it (1) the defendants' motions to dismiss, (2) the defendants' motion for summary judgment (which remained pending from earlier in the proceedings), (3) Henrise's motion for a continuance, and (4) the individual defendants' alternative motion to strike the Second Amended Complaint, the court ruled for the second time, rendering a memorandum opinion and order.

In that opinion, the district court granted the individual defendants' and City's motions to dismiss. The individual defendants' dismissal motion was granted because the district court concluded that Henrise failed to allege the violation of a constitutionally protected right, and that he therefore could not prove any set of facts that would entitle him to relief. In the alternative, the court held that even if Henrise had alleged the violation of a constitutional right, it was by no means a right that was clearly established at the time, so that the individual defendants were, in any event, entitled to qualified immunity. As for the § 1985(2) conspiracy claims against the individual defendants, the district court concluded that Henrise failed to show the requisite agreement among the defendants to deter Henrise from testifying in the federal litigation. Last, with respect to Henrise's claims against the City, the district court found the complaint "lacking in that it does not contain basic and fundamental allegations to put DeSoto on notice as to the bases for its claims regarding municipal policy or custom." The court went

on to state that even if Henrise <u>had</u> adequately shown that the City had an unconstitutional policy, he failed to state a constitutional claim for which relief could be granted. The court concluded that Henrise's claim must fail as a matter of law, because the court could find no underlying constitutional violation.

Having ruled on these motions to dismiss, the district court then denied the individual defendants' alternative motion to strike the Second Amended Complaint, and dismissed as moot the defendants' summary judgment motion and Henrise's motion for a continuance. Henrise timely filed a notice of appeal from the district court's order.

## II. Analysis

### A. Standard of Review

> We review <u>de novo</u> a district court's dismissal for failure to state a claim under Rule 12(b)(6). In considering a motion to dismiss, the complaint should be construed in favor of the plaintiff, and all facts pleaded should be taken as true. Motions "to dismiss for failure to state a claim [are] 'viewed with disfavor, and [are] rarely granted.'" A Rule 12(b)(6) dismissal will not be affirmed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." In the context of a 12(b)(6) motion in a section 1983 suit, the focus should be "whether the complaint properly sets forth a claim of a deprivation of rights, privileges, or immunities secured by the Constitution or laws of the United States caused by persons acting under color of state law." If there is no deprivation of any protected right the claim is properly

11

dismissed.[1]

B. Discussion

Henrise contends that the district court erred in three fundamental ways: (1) by concluding that he failed to allege the violation of a constitutional right; (2) by determining that he did not sufficiently allege a conspiracy; and (3) by finding that his complaint did not afford the City sufficient notice of his claims. Our painstaking review of the record satisfies us that the district court dealt generously with Henrise throughout the course of the proceedings, and did not err as to contentions (1) and (3). We differ with the court, however, on contention (2), convinced that Henrise did allege facts sufficient, if proved, to show a conspiracy and thus survive a Rule 12(b)(6) motion to dismiss. We therefore affirm the district court's ruling as to Henrise's § 1983 claims against the City and the individual defendants for violation of a constitutional right. We reverse the district court's ruling as to Henrise's § 1985(2) conspiracy claims against the individual defendants, however, and remand for further proceedings.

1. Failure to allege the violation of a constitutional right

Two subsidiary arguments are subsumed within Henrise's contention that the district court erred when it determined that he failed to allege the violation of a constitutional right. The

---

[1] Southern Christian Leadership Conference v. Supreme Court of Louisiana, 252 F.3d 781, 786 (5th Cir. 2001) (internal citations omitted).

12

first subsidiary argument is that the district court erred in determining that Henrise's complaint failed to allege an actionable violation of his right to freedom of association. The second is that the district court unfairly characterized Henrise's complaint as alleging only freedom of association claims under the First Amendment despite allegations in his complaint that, according to Henrise, state two separate free speech claims. The first argument is wholly without merit; the second, although facially troubling, also proves meritless on closer examination.

### a. Freedom of assocation

Henrise insists that the district court erred in dismissing his freedom of association claim. Quoting extensively from Roberts v. United States Jaycees,[2] the district court noted correctly that there are two categories of freedom of association claims. As the district court explained,

> The first category is epitomized by "highly personal relationships" such as marriage and family, and the personal affiliations that necessarily "attend the creation and sustenance of these highly personal relationships." [Roberts, 468 U.S. at 618-20]; Hobbs v. Hawkins, 968 F.2d 471, 482 (5th Cir.1992). The second category recognizes "associational rights derivative of the First Amendment rights of speech, assembly, petition for redress of grievances, and exercise of religion." Hobbs. v. Hawkins, 968 F.2d at 482.

After "closely examin[ing]" Henrise's complaint, the district court concluded that he was asserting the first type of freedom of association claim — those "epitomized 'by highly personal

---

[2] 468 U.S. 609, 617-18 (1984).

13

relationships' such as marriage and family." As the district court noted,

> Nowhere in the Plaintiff's Complaint does he allege that he joined with or associated himself with Pothen for the express purpose of speaking out on mismanagement, corruption or illegal activity that may have been occurring in the DeSoto Police Department. ... Plaintiff's claim is based not on his desire to exercise any right secured by the First Amendment but on his personal friendship with Pothen — nothing more.

We agree with the district court. There is no indication in the complaint that Henrise was alleging the second type of freedom of association claim. Restricted to consideration of only the first type, therefore, the district court did not err when it refused to classify Henrise's close personal and professional friendship with Pothen as the type of highly personal relationship that earns First Amendment protection. Despite Henrise's attempt to cast police officers' friendships as special and unique, those friendships still are not the type of intimate human relationship that demand protection as a "fundamental element of human liberty."[3] Henrise's insistence on appeal that, "[a]t the time of the filing of the Plaintiff's Complaint and at the time he was retaliated against and punished by the individual Defendants, the First Amendment right of freedom of association was clearly established," is to no avail. Albeit true that this right was clearly established, Henrise's association with Pothen simply was not the kind of familial or intimately close personal relationship

---

[3] Roberts, 468 U.S. at 618.

14

that is protected by that right.  The district court did not err in this determination.

### b. Free speech

Henrise also insists that he alleged two distinct free speech claims as well, and that the district court erred in characterizing his complaint as alleging only freedom of association claims under the First Amendment.   In particular, Henrise asserts in his appellate brief that his complaint "contains claims of <u>retaliation for his speech</u> [in reporting Horvath's suspected criminal activity to the City Manager] <u>as well as the Plaintiff's anticipated testimony</u> in support of Pothen's federal lawsuit <u>coupled with his association with Pothen</u>."   (Emphasis ours.)   As such, Henrise appears to be classifying both his report of Horvath's suspected criminal activity and his intended future testimony on Pothen's behalf as protected speech, asserting that the allegations of his complaint validly state a claim for retaliation for those two instances of speech.

As an initial matter, we note that Henrise's Second Amended Complaint alleges only the following three causes of action:

> 39.  Pursuant to the <u>First and Fourteenth Amendments</u>, and procedurally pursuant to <u>42 U.S.C. § 1983</u>, Plaintiff sues the <u>individual Defendants</u> for <u>retaliating</u> against him and punishing him <u>for his continued association with Pothen</u>, and for their <u>conspiracy</u> which was carried out and designed <u>for that purpose</u>.

> 40.  Pursuant to the first clause of <u>42 U.S.C. § 1985(2)</u>, Plaintiff sues the <u>individual Defendants</u> for their <u>conspiratorial attempts to prevent him from testifying in the litigation brought in federal court</u> by Pothen, and

15

for <u>punishing Plaintiff regarding the same</u>.

41.  Pursuant to the <u>First and Fourteenth Amendments</u>, and procedurally pursuant to <u>42 U.S.C. § 1983</u>, Plaintiff sues the <u>City of DeSoto</u> for <u>the actions of its policymaker —— the police chief</u> —— and for knowingly permitting the individual Defendants to <u>retaliate against, threaten, punish, and intimidate Plaintiff</u>.  <u>The City was on actual notice of this conduct, and failed to prevent it from occurring and recurring and by [sic] ratifying such conduct.</u>
[Emphasis added.]

Taking Henrise's own expression of his causes of action at face value, he fails to allege a constitutional free speech claim at all in ¶ 39, the only paragraph in which any constitutional (as distinguished from statutory) causes of action are proffered against the individual defendants.  The only constitutional claim asserted in ¶ 39 involves freedom of association, which, as we have noted, is not applicable on these facts.

Moving to ¶ 40, and setting aside for the moment the fact that this paragraph expresses a <u>statutory</u> cause of action for <u>conspiracy</u>, we note that it does pertain to prospective testimony. Construing the complaint extremely liberally, therefore, we possibly could glean a free speech claim from ¶ 40 premised on the fact that Henrise intended to provide testimony at Pothen's trial and so informed the defendants.  Last, regardless of which of the three cause-of-action paragraphs is liberally construed, the causes of action as Henrise chose to express them offer no indication that he means to cast his report of Horvath's suspected criminal activity as an exercise of free speech for which he suffered

16

retaliation.

Out of an abundance of caution, however, we have reviewed the entire record on appeal to see whether Henrise can legitimately claim to have alerted the court and the defendants through other pleadings to the fact that he meant to rely, at least in part, on a freedom of speech claim premised on his and Pothen's report of Horvath's suspected criminal activity.  For the most part, our record search has uncovered only repeated assertions similar to the following, taken from Henrise's reply to the defendants' motion to dismiss his Second Amended Complaint:

> Plaintiff alleges that after Pothen was terminated and Henrise was returned to work, Horvath engaged in a systematic pattern of retaliation against Henrise.  This retaliation was because Henrise refused to sever his association with Pothen, and because Henrise was to testify favorably in Pothen's federal lawsuit.
> [Emphasis added.]

In fairness, we must note that there is one instance in the record when Henrise equates his report of Horvath's suspected criminal conduct with an exercise of free speech.  In his reply to the defendants' motion for summary judgment,[4] Henrise stated:

---

[4] The district court did not err by not considering Henrise's summary judgment response brief, however.  "In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, [the district] court's review is limited to the allegations contained in the pleadings themselves. ... [D]ocuments incorporated by reference or attached to the pleadings as exhibits are considered part of the pleadings for all intents and purposes."  Harris v. Castle Motor Sales, Inc., 2001 WL 477241, at *1 (N.D. Ill. 2001) (emphasis added).  We discuss Henrise's summary judgment response only to show that he made the free speech legal argument prior to submitting his Second Amended Complaint; yet he failed to state any free speech

17

Although the primary thrust of plaintiff's claims center on the retaliation he suffered as a result of his relationship with Pothen and the favorable testimony he rendered to Pothen against defendants, plaintiff has alleged that it was initially his speech against Horvath which resulted in his suspension from the police department.

We note, however, that this reply was filed before the district court ruled on the first motions to dismiss. In that writing, the district court explained that it had

reviewed Plaintiff's First Amended Complaint and finds that the Complaint is lacking in specificity and particularity as to the conduct, acts, or omissions of each Individual Defendant. <u>The Complaint must allege what each Defendant did to cause Plaintiff to be deprived of a constitutionally protected right</u> and therefore be liable to Plaintiff personally. In other words, <u>Plaintiff must state specifically how each Defendant retaliated against him</u> and conspired to deprive him of a <u>constitutionally or statutorily protected right</u>. This is really not that difficult of a task if the facts for a cause of action exist. If the facts exist, <u>all Plaintiff has to do is allege the elements of a First Amendment retaliation claim</u>, <u>state facts which would establish those elements</u>, and <u>state the conduct of each Defendant that caused him to be subjected to unlawful retaliation</u>. [Emphasis added.]

Despite these generous and detailed instructions by the court, when Henrise submitted his Second Amended Complaint (his "third bite at the apple," as the district court later characterized it), Henrise <u>once</u> <u>again</u> failed to state clearly that he was alleging a claim against the defendants based on their retaliation for his exercise of free speech (in the form of reporting Horvath's conduct). Given the numerous opportunities afforded to Henrise to

cause of action in that amended complaint.

18

"get it right," therefore, and his continued insistence in every document (other than the excerpt quoted above) that his retaliation claims rested only on his freedom of association and his prospective testimony, we conclude that the district court did not err by refusing to consider any free speech claim based on the report by Henrise and Pothen of Horvath's conduct.

There remains, however, the possibility, alluded to above, that Henrise's Second Amended Complaint might, by very liberal construction, be read to include a retaliation claim based on Henrise's prospective testimony in Pothen's federal lawsuit. In the end, though, we must reject this possibility. His Second Amended Complaint simply does not allege such a cause of action against the individual defendants. As noted, the only related cause of action to be found is stated in ¶ 40. That cause of action, however, is expressly based on 42 U.S.C. § 1985(2). It is neither a constitutional claim nor a claim against the individual defendants except insofar as it alleges their participation in a conspiracy. As observed in connection with Henrise's free speech claim premised on the report of Horvath's criminal activity, this was Henrise's third attempt to articulate the causes of action he wished to assert against the defendants, and he simply failed —— despite coaching by the district court —— to allege any constitutional free speech claim whatsoever against the individual defendants.

It is hornbook law that a Rule 12(b)(6) dismissal motion

19

should not be granted unless it appears to the district court "beyond doubt that the plaintiff can prove <u>no set of facts</u> <u>in</u> <u>support of his claim</u> which would entitle him to relief."[5] It is also well-settled that the court must take all well-pleaded facts and allegations within the complaint as true when ruling on a Rule 12(b)(6) motion.[6] The question that usually confronts a district court in this context is whether the plaintiff has alleged sufficient <u>facts</u> to demonstrate an ability to prove all the elements of the stated cause of action. Here, however, the district court was faced with precisely the inverse problem: Perhaps the court could cobble together Henrise's alleged facts to constitute a free speech cause of action against the individual defendants, particularly Horvath; but Henrise himself, in three attempts, never identified such a cause of action. However plaintiff-friendly the 12(b)(6) standard may be, it does not require (or even permit) a court to "lawyer" a plaintiff's case, especially a plaintiff who is already represented by counsel. We therefore agree with the district court that Henrise failed to state a constitutional free speech claim, and we affirm the district court's ruling that Henrise failed to allege the violation of a constitutional right by the individual defendants.

---

[5] <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957) (emphasis added).

[6] <u>Brown v. Nationsbank Corp.</u>, 188 F.3d 579, 585 (5th Cir. 1999).

20

## 2. Conspiracy

Paragraph 40 of Henrise's Second Amended Complaint expressly alleges a cause of action against the individual defendants under the "first clause of 42 U.S.C. § 1985(2)." That statute provides a cause of action when

> two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully ....[7]

In considering this claim, the district court stated:

> The court is aware that Plaintiff contends that Defendants engaged in a conspiracy to prevent or intimidate him from providing testimony favorable to Pothen and adverse to the City of DeSoto; however, the court does not understand the basis of this conclusory allegation because <u>Henrise has not pleaded specific facts supporting a conspiracy</u>. He has not stated what each individual Defendant did to promote or further the alleged conspiracy. <u>As the essence of a conspiracy is an agreement or meeting of the minds of the participants, no facts are alleged that an agreement existed</u> or which state the nature of each individual Defendant's acts. <u>A hodgepodge of unrelated acts does not a conspiracy make, which is all Plaintiff sets forth</u>. Other than Plaintiff's conclusions, there are <u>no specific facts which would indicate that Defendants conspired</u> to prevent or intimidate Henrise from testifying on behalf of Pothen. ... The conclusory allegations set forth in Plaintiff's Complaint are simply too slender of a reed to support a claim under § 1985(2). [Emphasis added.]

We have reviewed the Second Amended Complaint and must disagree with the district court's conclusions on this point.

In ¶ 29, Henrise alleges that:

> [o]n May 4, 1996 plaintiff's immediate supervisor, Lt.

---

[7] 42 U.S.C. § 1985(2).

William R. Ransom, stated that defendants Box and Johns were actively compiling a dossier on Henrise to use to try and terminate Henrise.

This allegation is not merely conclusional. The suggestion that Henrise will call an independent witness to state that two police officials were working together to "actively compil[e] a dossier on Henrise" contradicts the district court's finding that "no facts are alleged that an agreement existed." Admittedly, the alleged purpose of the "dossier" was to "terminate" Henrise, not to prevent him from testifying, as § 1985(2) requires. It demands no great inferential leap, however, for a court to surmise that the same parties conspiring to "terminate" Henrise just might be doing so for the ultimate purpose of "intimidat[ing] or threat[ening] [him] ... from testifying to any matter pending [in federal court], freely, fully, and truthfully," as the statute requires. We are therefore satisfied that Henrise pleaded facts in support of his § 1985(2) conspiracy claim sufficient to survive the pro-plaintiff requisites of a Rule 12(b)(6) motion. We therefore reverse the district court's dismissal of that claim.

### 3. Insufficient notice of claims against the City

To reiterate, Henrise alleged the following cause of action against the City as defendant:

41. Pursuant to the First and Fourteenth Amendments, and procedurally pursuant to 42 U.S.C. § 1983, Plaintiff sues the City of DeSoto for the actions of its policymaker — the police chief — and for knowingly permitting the individual Defendants to retaliate against, threaten, punish, and intimidate Plaintiff. The City was on actual notice of this conduct, and failed to prevent it from

22

occurring and recurring and by [sic] ratifying such conduct.

As we have seen, the district court denied the City's first motion to dismiss Henrise's claims. In doing so, the court observed that

> [r]equiring a plaintiff to <u>identify the specific policy or custom</u> and allege that the policy or custom adopted by the municipality or policymaking official was the 'moving force' behind the constitutional violation is in no way inconsistent with notice pleading or the mandate of [<u>Leatherman v. Tarrant County Intelligence & Coordination Unit</u>[8]]. ... [T]he allegations of a complaint must not be conclusory; otherwise, a defendant is not placed on notice of the grounds for the claim. Conclusory allegations cannot survive a motion to dismiss. <u>See</u> [<u>Guidry v. Bank of LaPlace</u>[9]]. [Emphasis added.]

The district court then reviewed the elements that a plaintiff must allege if he wishes to impose liability on a municipality:

> To support a claim based upon the existence of an official custom or policy, the Plaintiff must plead facts which show that: 1) a policy or custom existed; 2) the governmental policy makers actually or constructively knew of its existence; 3) a constitutional violation occurred; and 4) the custom or policy served as the moving force behind the violation.[10]

Comparing Henrise's First Amended to this standard, the district court stated:

> The court has reviewed Plaintiff's Complaint in detail and finds that it does not contain these basic and fundamental allegations to put DeSoto on notice as to the bases for its claims regarding municipal policy or custom.

---

[8] 507 U.S. 163 (1993).

[9] 954 F.2d 278, 281 (5th Cir. 1992).

[10] <u>Meadowbriar Home for Children, Inc. v. Gunn</u>, 81 F.3d 521, 532-33 (5th Cir. 1996) (citing <u>Palmer v. City of San Antonio</u>, 810 F.2d 514, 516 (5th Cir. 1987)).

23

...

> Plaintiff's Complaint does not meet the basic requirements for pleading municipal liability under Section 1983 as set forth in [Spiller v. City of Texas City[11]] and Meadowbriar. The Court concludes that the allegations in Plaintiff's Complaint are conclusory, including the reference to Defendant Horvath as a policymaker, and as such fail to state a claim upon which relief can be granted.
>
> Plaintiff states that he has not pleaded "his best case with respect to DeSoto." ... Plaintiff will get his chance to do so because, rather than dismiss his Complaint, the court will permit Plaintiff to amend his Complaint in accordance with this order. In this regard, Plaintiff is strongly admonished to ride his best pony in the race, as he will not get another chance to race against De Soto.

When it reviewed the Second Amended Complaint, the district court found that, despite its earlier admonishment, "little, if anything, of substance has been added to it that is different from the Plaintiff's First Amended Complaint." As the "Complaint [was] still lacking in that it [did] not contain basic and fundamental allegations to put De Soto on notice as to the bases for its claims regarding municipal liability," the district court dismissed Henrise's claims against the City for failure to state a claim.

Our close reading of the Second Amended Complaint confirms the district court's conclusions. The Second Amended Complaint contains a conclusional insistence, without support, that "[i]f Horvath was not the 'official' policymaker, by custom the DeSoto Chief of Police is deemed the de facto policymaker in his capacity as the highest ranking law enforcement and police administrator

---

[11] 130 F.3d 162 (5th Cir. 1997).

within the City of De Soto," and an allegation that, "[b]y failing to act or investigate Henrise's complaints regarding retaliation by its Chief of Police, the City engaged in a deliberate and unmistakable course of conduct among various alternatives." These allegations fall <u>far</u> short of meeting the requirements for the imposition of municipal liability. Merely insisting that the police chief is the "de facto policymaker" will not make it so,[12] and the failure of the City to investigate Henrise's complaints of retaliation does not constitute a pervasive and widespread practice sufficient to show a municipal "custom" warranting the same attention as a written policy.[13] We therefore affirm the district

---

[12] We have, in any event, previously noted the Supreme Court's reservations concerning the theory of a "de factor" policymaker. <u>See</u> <u>Gros v. City of Grand Prairie, Tex.</u>, 181 F.3d 613, 616 n.2 (5th Cir. 1999) ("The Supreme Court has rejected the principle of a 'de facto policymaker.' <u>See</u> [<u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 131 (1988)].").

In addition, we note in passing the presence of a logical inconsistency in Henrise's allegations that the chief of police is the policymaker, and that the objectionable "policy" is the City's failure to investigate Henrise's complaints of retaliation. If the policy is not to investigate the police chief's retaliatory conduct, then the police chief is not the policymaker that Henrise needs; he needs to identify a policymaker who promoted the policy of not investigating the complaints of retaliation. On the other hand, if he prefers to cast the police chief as the policymaker, then he needs to identify a course of conduct engaged in <u>by</u> that individual —— e.g., the retaliatory conduct itself —— to serve as the "policy."

[13] If the plaintiff cannot point to a "policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers," as Henrise cannot, then the plaintiff must instead show a "<u>persistent, widespread practice</u> of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is <u>so common and well settled as to constitute a custom</u>

25

court's dismissal of Henrise's claims against the City.

## III. Conclusion

Our <u>de novo</u> review confirms that the district court determined correctly that Henrise failed to allege a constitutional violation against the individual defendants under 42 U.S.C. § 1983, and that his complaint also lacked the "basic and fundamental allegations to put De Soto on notice as to the bases for its claims regarding municipal liability." We therefore affirm the district court's dismissal of Henrise's § 1983 claims against the individual defendants and the City. We disagree with the district court's conclusion, however, that Henrise failed to plead facts showing the requisite agreement for a conspiracy, so we reverse the district court's dismissal of Henrise's conspiracy claims against the individual defendants under 42 U.S.C. § 1985(2), and remand the case for further proceedings.

AFFIRMED IN PART; and REVERSED AND REMANDED IN PART.

---

that fairly represents municipal policy." <u>Johnson v. Moore</u>, 958 F.2d 92, 94 (5th Cir. 1992) (quoting <u>Bennett v. City of Slidell</u>, 735 F.2d 861, 862 (5th Cir. 1984) (en banc)) (emphasis added).