# United States Court of Appeals
# for the Fifth Circuit

_____

No. 24-60028

_____

United States Court of Appeals
Fifth Circuit

**FILED**

September 6, 2024

Lyle W. Cayce
Clerk

Samuel Tony Pumphrey,

*Plaintiff—Appellee*,

*versus*

Triad Life Sciences, Incorporated; Convatec Triad Life Sciences, L.L.C.,

*Defendants—Appellants*.

_____

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 3:23-CV-299

_____

Before Jones, Willett, and Engelhardt, *Circuit Judges.*

Per Curiam:[*]

This is an interlocutory appeal from the denial of a motion to compel arbitration. The district court found that Triad Life Sciences waived its right to arbitration by moving to dismiss Samuel Pumphrey's wrongful-termination claim under Rule 12(b)(6). We disagree and REVERSE.

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-60028

## I

## A

This case arises from an employment dispute in Oxford, Mississippi. The plaintiff, Samuel Pumphrey, began working for Triad Life Sciences[1] a few years ago as a sales director for wound graft products. According to Pumphrey, he excelled in this role, collecting millions of dollars in revenue and never receiving "a single complaint about his performance." Pumphrey attributes his success to his "fifteen years of experience in the medical device industry."

Also attributable to his experience, Pumphrey says, is his knowledge of the "federal laws that govern the medical industry," including the anti-kickback statute, codified at 42 U.S.C. § 1320a-7b. And it was "[b]ecause of his familiarity with the" anti-kickback statute, Pumphrey continues, that he "grew concerned when he learned that" Triad's CEO, Russel Olsen, had allegedly "enticed physicians to purchase from [Triad] with significant monetary inducements." Eventually, Pumphrey reported Olsen's activity to others at Triad. Yet none of them, Pumphrey says, took his concerns seriously.

A few days after he reported Olsen's activity, Pumphrey was notified that his "position was being eliminated pursuant to a corporate restructuring." As Triad explains, it "was acquired by Convatec, Inc., resulting in various corporate reorganizations to integrate the new Convatec entity . . . into the broader Convatec enterprise." According to Pumphrey,

---

[1] About a year into Pumphrey's employment, Triad was acquired by Convatec, Inc., the other named defendant in this lawsuit. For simplicity, we refer to both defendants as "Triad."

2

however, Triad's reason for his termination—corporate restructuring—was "pretextual," the real reason being his decision to report Olsen's conduct.

## B

Based on that belief, Pumphrey sued both Triad and Convatec, asserting a single common-law wrongful-termination claim. Pumphrey specifically asserted a so-called "*McArn* claim," derived from the eponymous case of *McArn v. Allied Bruce-Terminix Co.*, in which the Mississippi Supreme Court held that "an employee who is discharged for reporting [the] illegal acts of his employer" can sue in tort for damages. 626 So.2d 603, 607 (Miss. 1993).

In his original five-page complaint, Pumphrey simply alleged that, "[d]uring the course of his employment, [he] learned that [Triad's] CEO was offering monetary inducements to physicians to gain their business" and thus violated the anti-kickback statute. Based on that single allegation, Triad moved to dismiss Pumphrey's claim under Rule 12(b)(6), arguing that he had not pleaded a viable *McArn* claim and that his complaint failed to meet federal pleadings standards.

Nine days later, Pumphrey filed his first amended complaint, adding facts that (he argued) cured any deficiency in his original complaint. Then, a little over a month later, Triad filed three motions on the same day: (1) a motion to compel arbitration, (2) a motion to dismiss for lack of personal jurisdiction, and (3) another motion to dismiss for failure to state a claim. In the motion to compel arbitration, Triad, for the first time in the litigation, pointed to an arbitration clause in Pumphrey's offer letter:

> [A]ny controversy, dispute or claim arising out of or relating in any way to this Agreement or to your employment with Triad, . . . including all disputes related to or arising out of your termination of your employment, and including without limitation any and all statutory or common law claims arising

> out of or relating in any way to your employment with Triad, shall be mediated in good faith . . . pursuant to the National Employment Arbitration Rules and Mediation Procedures of the American Arbitration Association.

No one disputes the validity of the arbitration clause above. Nor does anyone dispute that its terms encompass Pumphrey's claim against Triad. Instead, Pumphrey argued to the district court, and now maintains on appeal, that Triad waived its right to compel arbitration by moving to dismiss his claim.

The district court agreed. "If found persuasive," the district court reasoned, Triad's "arguments constitute a clear basis for dismissing this case with prejudice, and this court concludes that, by filing their motion to dismiss, defendants 'substantially invoked the judicial process' within the meaning of Fifth Circuit precedent." The district court accordingly denied Triad's motion to compel on waiver grounds.

Triad timely appealed. *See* 9 U.S.C. § 16(a)(1)(C). We now review the district court's waiver finding *de novo*. *In re Mirant Corp.*, 613 F.3d 584, 588 (5th Cir. 2010).

## II

"The right to arbitrate a dispute, like all contract rights, is subject to waiver." *Nicholas v. KBR, Inc.*, 565 F.3d 904, 907 (5th Cir. 2009). A party can waive its contractual right to arbitration by "substantially invok[ing] the judicial process." *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 577 (5th Cir. 1991) (citation omitted). "To invoke the judicial process, a 'party must, at the very least, engage in some sort of overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Mirant*, 613 F.3d at 589 (quoting *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 329 (5th Cir. 1999)).

No. 24-60028

One such "overt act" is moving to dismiss under Rule 12(b)(6). Indeed, since *Twombly*, *Iqbal*, and the introduction of the "plausibility" standard, motions to dismiss for failure to state a claim have taken on a central, gatekeeping role in "weeding out meritless claims." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).

So, in some instances, a defendant can attempt to adjudicate the merits of a plaintiff's claim under a Rule 12(b)(6) motion, asserting either that there is a fundamental flaw in the plaintiff's legal theory, *see, e.g.*, *Nietzke v. Williams*, 490 U.S. 319, 326–27 (1989), or that the defendant is entitled to dismissal based on an affirmative defense, *see, e.g.*, *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986). In those instances, when amending the complaint may be "futile," *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872–73 (5th Cir. 2000), granting a motion to dismiss can result in dismissing a plaintiff's claims with prejudice, *see McCasland v. City of Castroville*, 478 F. App'x 860, 860–61 (5th Cir. 2012) (per curiam).

Yet not all 12(b)(6) motions to dismiss are the same. *See Hooper v. Advance Am., Cash Advance Ctrs. Of Mo., Inc.*, 589 F.3d 917, 922 (8th Cir. 2009) ("Motions to dismiss are not homogenous."). Sometimes a defendant may move to dismiss a plaintiff's claims simply because the underlying allegations are vague, conclusory, or incomplete. *See S. Christian Leadership Conf. v. Supreme Ct. of State of La.*, 252 F.3d 781, 786 (5th Cir. 2001). Similarly, a defendant may file what we have previously called a "perfunctory motion to dismiss," nominally testing the plaintiff's pleadings before filing an answer. *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1162 (5th Cir. 1986); *see Underwood v. Hunter*, 604 F.2d 367, 369 (5th Cir. 1979) ("[A] motion to dismiss may result in a rejection of the pleadings, but it does not go to the merits of the case.").

No. 24-60028

In those instances, the district court will often grant plaintiffs leave to amend their complaint to cure the alleged deficiencies. *See* Fed. R. Civ. P. 15(a). "[R]epleading via amendment," we recently observed, is "a routine practice" following a motion to dismiss, and granting leave to amend is encouraged, especially "when the plaintiff might be able to state a claim based on the underlying facts and circumstances." *Ass'n of Am. Physicians & Surgeons Educ. Foundation v. Am. Bd. of Internal Med.*, 103 F.4th 383, 394 (5th Cir. 2024) (internal quotation marks and citation omitted).

Thus, given the variety of motions to dismiss under 12(b)(6), along with the differing consequences that attend them, we have held that simply filing a motion to dismiss can be, but is not necessarily, enough to waive arbitration rights. *See Mirant*, 613 F.3d at 589. Indeed, this court has declined to draw any "bright-line rule . . . for deciding whether a party has waived its right to arbitration." *Ibid.* Instead, waiver "depends on the facts of each case," *Tenneco Resins, Inc. v. Davy Int'l, AG*, 770 F.2d 416, 420 (5th Cir. 1985), and the bottom-line inquiry is whether there is "some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration," *Mirant*, 613 F.3d at 589.

## III

In light of these well-established principles, we cannot conclude on the record before us that Triad waived its right to arbitration by moving to dismiss Pumphrey's claim. We read Triad's motion to essentially contain two arguments, neither of which would have warranted adjudicating Pumphrey's claim on the merits and dismissing it with prejudice.

First, Triad argued that Pumphrey's *McArn* claim essentially involved an allegation of fraud and thus failed under the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure. *See Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009).

This, of course, is a non-merits argument that goes to the sufficiency of the pleadings, and Pumphrey does not pretend otherwise.

Second, Triad argued that Pumphrey's bare allegations, even taken as true, could not establish a successful *McArn* claim because nothing in Pumphrey's complaint established illegal conduct. Unlike Triad's first argument, this second one is much closer to the merits of Pumphrey's claim. But, in context, we still read it as an objection to the sufficiency of the allegations in Pumphrey's original complaint. As Triad explained later in its motion, Pumphrey's unadorned accusation of the existence of a "monetary inducement" was simply not enough to know whether or not the alleged behavior fell within the terms of the federal anti-kickback statute. Triad needed to know more in order to defend itself. *Cf.* Wright & Miller, 5A Fed. Prac. & Proc. § 1298 (4th ed.) (noting that a complaint must "enable [the defending] party to prepare a responsive pleading"). Thus, just as he could in response Triad's first argument, Pumphrey could have obviated Triad's second objection by detailing what, exactly, substantiated his allegation that Triad was violating the anti-kickback statute.

In fact, Pumphrey did just that. He later filed an amended complaint with substantially more detail about Triad's alleged criminal activity and argued in his response to Triad's motion that even if his original complaint did not meet federal pleading standards, his first amended complaint did. Pumphrey's view of Triad's motion, at least at the time he responded to it, thus mirrors ours. Had the district court granted Triad's motion and dismissed Pumphrey's claim with prejudice, as it suggested it would if it agreed with Triad's underlying arguments, we think doing so would have likely been an abuse of discretion. *See Hernandez v. W. Tex. Treasures Est. Sales, L.L.C.*, 79 F.4th 464, 468–69 (5th Cir. 2023); *see also Ass'n of Am. Physicians & Surgeons Edu. Found.*, 103 F.4th at 394.

No. 24-60028

Pumphrey, for his part, counters that Triad effectively sought dismissal with prejudice because Triad had, in so many words, suggested that amending the complaint would have been futile. Pumphrey plucks one sentence from Triad's motion in support: "If Pumphrey was aware of specific facts of an actual violation of the [anti-kickback statute], he surely would have pled them." According to Pumphrey, "[t]his is a futility argument in every meaningful respect." Pumphrey also points out that Triad had called his allegations "fatally flawed," verbiage he regards as consistent with a futility argument.

These are compelling arguments, but they do not change our view of Triad's motion. "Fatally flawed" is such a hackneyed phrase in legal argumentation that it could hardly be taken as staking out a particular position in a motion to dismiss.[2] And true, Triad's other contention—that if Pumphrey were aware of other facts, "he surely would have pled them"—is a plainer appeal to futility. But we think it is just another example of inflated rhetoric. In context, it is easily read as an off-handed counterfactual assertion with no discernible relation to the thrust of Triad's motion. Our observations regarding liberally granting leave to amend still stand.

IV

For these reasons, we REVERSE the district court's order denying Triad's motion to compel arbitration and REMAND for further proceedings consistent with this opinion.[3]

---

[2] Cf. *Fatal*, BRYAN A. GARNER, GARNER'S DICTIONARY OF LEGAL USAGE 353 (3d ed. 2011) ("In law, this word commonly means 'providing grounds for legal invalidity'").

[3] Because we conclude that Triad did not substantially invoke the judicial process with its motion to dismiss, we need not address whether it was aware of its right to arbitrate at the time it filed its motion.